And at this time we'll hear Barikyan v. Whitaker. May it please the court, Ben Winograd for the petitioner. If I could please reserve two minutes for rebuttal. The question in this case is whether the Board of Immigration Appeals erred in finding that my client's conviction for conspiracy to commit money laundering qualifies as an aggravated felony under the immigration laws. We contend that it did err for three separate reasons. First, because my client was only convicted of conspiracy to commit money laundering, his conviction could only qualify as an aggravated felony under subsection U of the statutory definition, as distinct from subsection D, as the government alleged. Mr. Whitaker Let me interrupt right there. I don't understand that argument at all. Subsection D refers to various laws, some of which have conspiracy in them or not, and makes references to various sanctions. Subsection U is a catch-all that adds conspiracy for all of those, indeed, whether they have conspiracy or not. There's no inconsistency. There's no surplusage. There is rather silly NIFTA, but it's just NIFTA in Richardson. So I just don't understand the argument of why D is not directly linguistically and contextually in point. Judge Calabresi I ought to say that we understood in the courtroom most of what was said by Judge Calabresi, but not everything. So if counsel doesn't give a full answer, it may be that we haven't picked up the full question. Mr. Zients Well, Judge Calabresi, I would respectfully disagree with your characterization of the discussion in matter of Richardson as dicta. Judge Calabresi Putting that aside, though, I think the point that Judge Calabresi is making is you have here in 18 U.S.C. 1956H that any person who conspires to commit any offense defined in this section is subject to the same punishment as the substantive offense. So why isn't that a simple statement? Conspiracy is covered by 1956, ergo your argument fails. Mr. Zients Well, because, Your Honor, the board said in matter of Richardson, our reading of it, is that convictions under 1956H can only be charged in immigration court under subsection U. So we believe that the board is trying to have it both ways. In matter of Richardson, it's saying you could only charge it under subsection U. Judge Calabresi Ultimately a question, though, of what the board is saying is that in this case it doesn't matter what they said. Mr. Zients Well, we don't think that whether matter of Richardson was correctly decided, we don't think that question is before the court. We think the question before the court is, assuming that matter of Richardson was correctly decided, can the board's unpublished decision in this case be reconciled with the precedential decision in that case? I think at a minimum, it would be worth remaining for the board, the board in this, our first argument was based on matter of Richardson. The board didn't even acknowledge matter of Richardson in its decision in this case. It simply, it made the point that subsection D refers to all offenses in 1956, but it didn't even attempt to grapple with this, what we think is a conflict between matter of Richardson and its decision in this case. And we would also point to, aside from matter of Richardson, we think there is a venue provision 1956I in the criminal statute, which refers to, which says, has one venue provision for an offense under this section or section 1957, and then has a second venue provision for an attempt or conspiracy offense under this section or 1957. So I think we have the same dichotomy or the same distinction in the aggravated felony definition as we by that first argument. Our second argument is that the board simply applied the wrong standard of review in determining whether the amount of funds laundered exceeded $10,000. Under its own precedent in federal regulations, the board, yes. There's no way of inferring from the amount of forfeiture what the amount of laundered funds was. Is that, that's the amount of forfeiture. Uh, for one thing it's in forfeiture proceedings, the standard is only preponderance, not clear and convincing as it is in deportation proceedings. But as importantly, or perhaps more importantly, um, the amount of forfeiture does not necessarily reflect the amount of funds that were actually laundered. There's no way to know. So this is really a question for your adversary. Uh, but it's not, but you can say, well, you, we can draw some inference from the amount of forfeiture because it could be 1%, it could be 100% and that was, uh, attributed to the, um, uh, amount actually laundered or because it also includes a bunch of other things. And so it is at least to infer anything about the amount of laundered funds from the amount of forfeiture. Precisely that is our argument, your honor. And, and there have been cases decided by this court, uh, it's 2006 decision in Nekoloff, um, where the defendant was found to have laundered a $55,000 but was required to forfeit loose diamonds that could, that valued at up to $2 million, 40 times the amount that he actually laundered. Here, the amount that he laundered was, uh, only 12 times the statutory threshold. It was, it was, it was not a very long period of time. And, uh, your theory is that, uh, is that, uh, uh, if it was even, uh, if it was even $10,001, he was able to somehow multiply that by 12 times. I mean, even if he was investing in a Ponzi scheme, he couldn't have, uh, uh, generated that level of return. Well, your honor, to be clear, it's not limited to investments. It could be simply purchasing. If he, if he'd used $5,000 of tainted funds to purchase a property valued at $120,000, the entire property worth $120,000 could have been forfeited. So I, at trial, the, the analogy was made to investing, but that is not the, the sole, uh, possibility here. It could have been, uh, uh, it could, or it could have simply been commingling the argument that was made was the investment basis. Cause that's all I've seen. Well, that, I mean, that was, that was an example, but, um, as, as I'm sure that, you know, the court is well aware, forfeiture, uh, can, can simply fund legitimate funds can be forfeited simply by commingling them with tainted funds. Um, and, and, and that argument was certainly presented, uh, to the board. Um, just to, to back up to the, the, the point on the standard of review, um, the board has repeatedly held that it must apply de novo review in determining whether the parties have met the relevant burden of proof. Uh, we cite those cases. There are at least 10 of them in footnote five of our opening brief and the IJ in this case never made a specific factual finding about how much money was actually laundered. The only basis for his decision was that in his view, DHS satisfied its burden of establishing by clear and convincing evidence that the amount of funds laundered was over 10,000. Um, so, and, um, oh, I see my time is up. I'll reserve the remainder for rebuttal. You have reserved rebuttal. We shall hear you then. Thank you. Thank you. Good morning. Good morning, your honors. I'm Erica Miles for the acting attorney general. To very quickly address the first point about which statutory provision of the aggravated felony definition, whether or not the D provision as the charge basis for the charge is correct. I wholeheartedly agree with Judge Calabresi that the language in sub part D is unambiguous and where it is unambiguous, what the board might have said in dicta talking about only the U provision is irrelevant if this court agrees. You would agree that charging under D instead of U was a bad practice. I mean, the government then takes upon itself, uh, additional burdens, including proving the $10,000 by clear and convincing evidence. I would not agree that it's bad practice if given that he was convicted. Lawyers plead the easiest thing on which they can win. Well, when you, when you charge under the U conspiracy provision, you have to additionally charge under the A through T. You have to show that one of those aggravated felonies enumerated in A through T was met. So they would have to charge U plus D the money laundering offense anyway. So here they just cut to the chase and charged D. And also under at least ninth circuit precedent, you would have to charge, you would have to move an overt act or charge that an overt act had been, where, where is that's not required under, uh, uh, 56 day, right? That's not required under 1956, nor is it required under Richardson, but they didn't need to address the U provision, um, interpretation by the board because this is squarely within D and U is just not necessary at all. I'll move on to the forfeiture order. Oh, did you have a question? Yes, but certainly Richardson suggests a different outcome. Shouldn't a BIA be asked to explain when it deviates from what is at least a suggestion of a different outcome? I'm not sure I understood the question. It, it, uh, it, it's, uh, sounding a bit scrambled at this end. My question is that Richardson suggested a different outcome about U and D and should we ask the BIA to make clear when something in its language in a previous opinion deals with an issue does not apply? Is that something we should do or not? I think the question is whether we should, uh, uh, grant and remand for the, for having in order for the BIA to explain, um, uh, the wording in, in Richardson and its possible impact on this case. Yes, that's what I understood as well. And, uh, no, that's, that should not happen in this case because again, as long as you view the language in D as unambiguous, it doesn't matter what the board might have been inferring or getting at in Richardson, maybe not so interpreting the U provision and not D, um, and it is inapposite to this, to this case. So remand would not be, um, would not be requested here. As for the forfeiture order, for this court to accept jurisdiction in this case, the court would have to find that Mr. Barikian is showing you that the evidence compels you to find that Homeland Security did not meet its burden by clear and convincing evidence of that 10,000 dollar threshold, uh, um, by clear and convincing evidence, excuse me. There's any logical basis for the inference that the amount of, uh, laundered funds can be estimated from the amount of forfeiture. So it's not a question of, you know, uh, what I'm saying is, is basically, erasing really is a logical question. If forfeiture can be based on a whole bunch of things, and we know from reported cases that sometimes a forfeiture is greatly in excess of the amount of laundered funds, then how can a judge make any finding of amount of laundered funds based on the amount of the forfeiture? We have here a punitive forfeiture, not a civil forfeiture. And in that context, we have Supreme Court case law saying that a punitive forfeiture must bear some relationship to the gravity of the offense that it was designed to punish. That would be United States versus Bajikhajian, 524 U.S. 321 at 334. And what that case further than held is a punitive forfeiture violates the excessive fines clause if it's grossly disproportional to the gravity of a defendant's offense. Here, if we were to accept Mr. Barakian's premise that he laundered $10,000 or less only, that would mean that over $110,000 of legitimate funds were also ordered forfeited to the United States government. That, to me, an over 10 times amount more than a purported laundered amount, the illegal amount, is excessive and grossly disproportionate. The cases you're referring to, the Supreme Court cases, are under the excessive fines clause and they dealt with things like forfeiting an entire yacht on the basis of a marijuana cigarette, forfeiting an entire farm on the basis of a small plot of marijuana plants and so forth. They were far, far greater than what you're- Well, in the case I'm citing, it was a $5,000 versus $350,000. Here we have $10,000 versus $120,000. I don't think they're all that far apart. We also have New York law. New York law, in order for legitimate funds to be forfeited, so commingled legitimate funds with the laundered money. And in the Eastern District of New York, which was upheld by the Second Circuit in the Subnani case, 566 F. Sup. 2nd, 148, the court adheres to the facilitation theory. So the facilitation theory is that untainted money is still considered involved in the laundering, not just traceable, actually involved in the laundering because it's used to facilitate or cover up the crime. It makes it less difficult or more or less free from obstruction or hindrance. So they have to make that finding about the forfeited, allegedly legitimate funds. It has to have been used to facilitate the laundering in order for it to be lawfully forfeited. Remind me, was Mr. Barakian's conviction after a trial or after a plea? I believe it was after a plea. I think it was after a long, he was cooperating. So wouldn't there have been easily accessible evidence? Why did the government rely on the forfeiture when it could have just filed the pre-sentence report or something like that would have given specifics? I think by the very nature of what was going on with him cooperating in the grander scheme with witnesses, that is exactly why there isn't more evidence available. As counsel pointed out, the indictment does not list the amount either. So what we do have is here, while we don't know precisely how much money was laundered, we don't have to know precisely how much money was laundered. We just have to know, feel that there's clear and convincing evidence through this forfeiture order that it was at least $10,000, just over $10,000. We have a $120,000 forfeiture order here and the Supreme Court would say that you cannot have an excessive fine that is grossly disproportionate to the offense. I think all of that put together, a rational judge, it is wholly irrational that the immigration judge found that Homeland Security met its $10,000 threshold with this $120,000 forfeiture order. If the court does not have any... Oh, did you have a question, Judge? If this was a plea agreement, is it not possible that this man agreed to a forfeiture that might, by the Supreme Court standards, be too high, but did that because he was getting in another part of the plea things that he wanted? Is the fact that this is a plea agreement makes the link between the forfeited amount and the amount laundered more suspicious, I should think? Well, while I can't look behind what happened, I don't know what happened in arriving at that plea agreement, but we do know that judges, that in entering these orders, do need to look and feel convinced by a preponderance of the evidence that before they enter a sentence or before they enter a forfeiture order, judges are free to throw out pled to amounts and pled to sentences if they don't think there really is a factual basis underpinning it. And it's not for an immigration judge to look to collaterally or retry what happened, just know that there's nothing in the record here challenging the reliability of this amount or the validity of the forfeiture order. Thank you. Thank you. Mr. Winograd. Thank you, Your Honors. Just briefly on the matter of Richardson issue, I would say the court does not need to remand for clarification if it is prepared to rule for us on the merits. If the court believes that the government didn't sustain its charge under subsection D, it would be purely academic to remand for the board to clarify whether subsection D or subsection D is the proper charge. On the standard of review, this court has said multiple times without caveat that whether an offense is an aggravated felony is a question of law subject to de novo review. That is the standard that this court applied in Varughese, which is the case that said the amount of funds in subsection D refers to the amount of funds laundered, not any other funds that may have been commingled with it. In terms of the Eighth Amendment issue, all I will say is, as I said before, this court has upheld forfeitures of far more greater proportion. If the government thinks that a forfeiture order 12 times the amount of laundering violates the Eighth Amendment, I suspect the folks next door at the U.S. Attorney's Office would vehemently disagree. I would also say that many of the government's arguments that were made at argument today appear nowhere in the board's decision. And under the Chenery Doctrine, which is a cornerstone doctrine of administrative law, this court is limited to the four corners of the board's opinion in determining whether the agency's decision can be affirmed. And then finally, Your Honor is correct. This case, the criminal case, was resolved by a plea agreement. And it's simply baffling why DHS did not attempt to submit additional evidence relating to the amount of funds laundered. The immigration judge specifically invited them to do so. The immigration judge also invited DHS to amend the charging document to reflect the charge under subsection U. DHS disregarded both requests. It appears that DHS was simply trying to see if it could win with as little evidence as possible in this case. If the court has no further questions. Thank you. The court is grateful for very helpful arguments by both sides. We will reserve decision.